UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

KIT PACK CO.,

    Debtor.                                                                                                                                                 No. 11-08-10206 TL

KIT PACK CO.,

    Plaintiff and
    Counterdefendant,

v.                                                                                                                                                      Adv. No. 08-1031 T

GERALD M. FRIEDMAN,
THE MARVIN GROUP, INC.,
MARVIN LAND SYSTEMS, INC.,
MARVIN ENGINEERING CO., INC., and
LAPEER INDUSTRIES,

    Defendants,
    Counterplaintiffs, and
    Third Party Plaintiffs,

v.

KIT PACK CO., KPC INC., and
DOUGLAS BAILEY,

    Third Party Defendants.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is the result of a failed business relationship between the Plaintiff and Gerald Friedman. Friedman purchased assets from Plaintiff in 1999, pursuant to a plan of reorganization confirmed in Plaintiff's prior bankruptcy case. In spite of the purchase, Plaintiff retained the assets and continued using them, with Friedman's oral consent. The

undocumented relationship eventually soured, Plaintiff filed this bankruptcy case and adversary proceeding, and the Court must now determine the legal rights and liabilities of the parties.

In the adversary proceeding Plaintiff sued Friedman and his affiliates for turnover, declaratory judgment, breach of contract, and ten other claims. The defendants filed six counterclaims for money damages and other relief. The amount in controversy is in the range of $2,000,000.

Movants/defendants[1] filed their Joint Motion for Summary Judgment on November 24, 2009, doc. 88 (the "Motion"). Plaintiff responded January 5, 2010, doc. 104 (the "Response"), and Movants replied January 21, 2010, doc. 122 ("Reply").[2]

This adversary proceeding includes core and non-core matters. The Court has considered the briefs and supporting papers of the parties, and has made an independent inquiry into applicable case law. Being sufficiently advised, the Court hereby issues the following Memorandum Opinion. For the reasons set forth below, the Motion is denied.

## I. FACTS

The Court has gleaned the following facts[3] from the briefs and documents submitted by the parties:

Plaintiff is in the business of, inter alia, manufacturing and providing overhaul kits to the United States Department of Defense.[4]

---

[1] Movants are all of the defendants, i.e. Friedman, Marvin Engineering Co., Inc. ("Marvin Engineering"), Marvin Land Systems, Inc., the Marvin Group, Inc. (together, the "Friedman Group"), and Lapeer Industries ("Lapeer").

[2] Movants asserted 94 alleged material undisputed facts, and supported the Motion and Reply with about 210 pages of affidavits, deposition testimony, and documents. Plaintiffs and third party defendants' responses are supported by an additional 280 pages of deposition testimony, affidavits, and documents.

[3] This recitation of the facts is for the purpose of explaining the decision to deny the Motion, and is limited to the current record. Although allowed to do so by F.R.Civ.P. 56(g), the Court is not ruling that any of the facts set forth above have been established in this adversary proceeding.

-2-

Friedman is the Chairman and CEO of Marvin Engineering and owns 44.4% of its stock. Marvin Engineering owns 100% of the stock of Marvin Land Systems, Inc.[5] The Marvin Group, Inc. is not a separate entity.[6] Lapeer is an indirect affiliate of Friedman.[7]

Plaintiff filed another Chapter 11 case in 1996, and confirmed a plan in 1999.[8] Under the plan, Plaintiff sold certain "Assets"[9] to Friedman.[10]

Despite the sale to Friedman, Plaintiff continued to use the Assets without interruption, with Friedman's knowledge and agreement (at least until the relationship broke down in 2007).[11]

Plaintiff and/or its owners, Douglas and Edward Bailey, had an oral agreement with Friedman that, if Plaintiff and/or the Baileys paid Friedman about $453,000, plus 10% interest, Plaintiff or the Baileys would be given a 30% interest in the Assets and/or a new corporation that would own the Assets.[12] In the Motion the $453,000 is described as the "Original Investment Loan," but Friedman testified that neither the Baileys nor Plaintiff was obligated to pay Friedman any portion of the $453,000.[13] Rather, Friedman characterized the arrangement as an option to buy back 30% of the Assets. *Id.*

Part of the loose oral understanding apparently included the possibility of forming KPC, transferring the Assets to it, and issuing KPC stock to Friedman (70%) and the Baileys (30%),

---

[4] Plaintiff's First Amended Complaint, doc. 62 (the "Complaint"), ¶10; Friedman Group's Answer, ¶11.
[5] Doc. 88-1, p. 1, ¶¶ 3-4.
[6] Doc. 88-1, p. 2, ¶5.
[7] Doc. 88-2, p. 10 (Friedman's and Marvin Gussman's adult children, through LLCs, own 49% of Lapeer).
[8] This Court approved said Second Amended Plan of Reorganization and Second Amended Disclosure Statement by Order entered in No. 11-96- 15312 ML on July 26, 1999 (the "1999 Confirmation Order").
[9] The "Assets" are described in the 1999 Confirmation Order. Doc. 88-5, p. 8.
[10] Friedman and his business partner Marvin Gussman later entered into an agreement which provided for the co-ownership of the Kit Pack assets and for the division of receipts between Gussman and Friedman. Gussman died in 2008.
[11] Doc. 88-1. P. 3, ¶13.
[12] Motion, p. 4, ¶15.
[13] Doc 109, page 6 (Friedman depo., p. 40); Doc. 88-1, paragraph 9.

-3-

when/if the Baileys/Plaintiff paid the $453,000 plus interest.[14] Doug Bailey formed KPC on May 22, 2000.[15] Friedman signed the by-laws at about the same time.[16] In 2006 Plaintiff conveyed the "Real Estate"[17] portion of the Assets to KPC.[18]

After entry of the 1999 Confirmation Order, Plaintiff and Movants did business together until 2007. The business dealings included:

-- A 1998 contract with the department of defense, denoted Solicitation No. SPO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 (the "1998 Contract");[19]

-- A number of small business set aside contracts, with a total contract price of about $1,265,000;[20]

-- Contracts with International Truck for its "MRAP" project. The total contract price may have been as much as $6,000,000;[21] and

-- A contract with International Truck for reworking certain gun mounts, in an unspecified amount.[22]

As part of the ongoing relationship, Friedman and Gussman loaned money to Plaintiff, and Plaintiff executed a number of promissory notes payable to the order of Friedman and Gussman.[23]

---

[14] Doc. 109, p. 9 (intent was to form a corporation when the Baileys paid off the Original Investment Loan); Doc. 109, p. 14.
[15] Doc. 117, p. 20
[16] Doc. 121, p. 3. The date Friedman signed the by-laws is uncertain in the current record.
[17] The "Real Estate" is a 3.15 acre tract with a street address of 285 E. Thorpe Road, Las Cruces, NM, and a 3.2 acre tract with a street address of 5486 Dona Ana Road, Las Cruces, NM.
[18] Motion, ¶33 (Plaintiff did not dispute the allegation).
[19] Doc. 88-1. p. 20.
[20] Doc. 88-1. pp. 7-8, ¶¶ 35-39.
[21] Doc. 88-1. pp. 9-10, ¶¶ 44-48.
[22] Doc. 88-1. p. 10, ¶¶ 49-50.
[23] Motion, p. 7; Friedman's filed proof of claim, no. 43-1. Plaintiff never controverted this allegation.

Several years into the undocumented business relationship, Friedman decided that he no longer wanted to consummate the 70/30 business ownership arrangement originally contemplated by the parties.[24] Friedman did not inform Plaintiff or the Baileys of this change of position.[25]

There is evidence in the record that for a period of time Friedman and others held Plaintiff out to third parties as part of the "Marvin Group,"[26] that Friedman described the Marvin Group as "in control" of Plaintiff,[27] and that Friedman represented that he was in "partnership" with the Baileys.[28]

The relationship apparently ended in the fall of 2007, after International Truck awarded the MRAP contract to Marvin Engineering Company.[29] In October, 2007, an employee of the Friedman Group visited Plaintiff and suggested that its operations be shut down, all employees laid off, all inventory, materials, and pending work transferred to the Friedman Group, and all accounts receivable paid to Friedman and other creditors.[30] The Baileys rejected this advice.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[24] Doc. 109, p. 9; doc. 88-1, p. 4.
[25] Doc. 109, pp. 14-15.
[26] Doc. 117, p. 17; doc. 119, p. 54-56.
[27] *Id.*
[28] Doc. 116, p. 19; doc. 119, p. 45.
[29] Doc. 88-1, p. 9, ¶45.

Case 08-01031-t    Doc 135    Filed 11/09/12    Entered 11/09/12 13:27:58 Page 5 of 14

of law.  Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment.  *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. B.A.P. 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).  *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at

---

[30] Doc. 116, pp. 31, 36.

1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### III. DISCUSSION

A. <u>In General</u>. By the Motion, Movants seek summary judgment in their favor on all claims and counterclaims. Unhelpfully, the Motion does not address each claim. For example, the Motion does not specifically address the six counts in the Friedman Group's counterclaim, nor Counts I, II, or most of Count III of Plaintiff's Complaint. The Court therefore will examine each claim and address whether summary judgment is appropriate, given the current state of the record.

B. <u>Friedman Group's Counterclaims</u>.

    1. <u>Specific Performance</u>. Friedman seeks a judgment compelling Plaintiff to perform its obligations under the 1999 Confirmation Order, including conveyance of the Real Estate to Friedman. The Court finds that there are fact issues preventing summary judgment on this claim (and the other claims), including:

        a. Was there an agreement between the parties about the post-1999 ownership of the Assets?

-7-

        b.        If so, what were the terms of the agreement?

        c.        Did the agreement include the formation of KPC, and the conveyance of the Real Estate to KPC?

        d.        Who were the parties to the agreement? The Baileys? Plaintiff? Friedman? Gussman? How were the parties to conduct business pending performance of the agreement?

        e.        What effect did Friedman's alleged transfer of a 50% interest in the Assets to Gussman have on the agreement?[31]

        f.        If the Baileys were parties to the agreement, do they need to be plaintiffs in this adversary proceeding?

        g.        Did Plaintiff and/or the Baileys perform under the agreement, such that they were entitled to 30% of the purchased assets, and/or 30% of the KPC stock?

        h.        Upon Gussman's death in 2008, did his alleged interest revert to Friedman, go to Gussman's heirs, or go elsewhere? Do Gussmans' heirs and/or assigns need to be parties to this adversary proceeding?

        i.        Is Plaintiff entitled to compensation for the small business set-aside contracts? If so, in what amount? If not, why not?

        j.        Is Plaintiff entitled to compensation for directing the International Truck business to the Friedman Group? Is that what actually happened? If so, how much compensation? If not, why not?

---

[31] Doc. 88-1, pp. 2-3, ¶8.

-8-

k. Did Friedman agree to pay off the Mesilla Valley Bank loan? Is so, what damages if any should be awarded to Plaintiff for Friedman's failure to do so?

l. Was Friedman an insider of Plaintiff? If so, did the Debtor make any payments to Friedman within a year of the petition date, and does Friedman have any defenses to an insider preference claim?

m. Did Friedman give Bailey repeated assurances about treating Plaintiff "fairly" in connection with the contracts the Friedman Group received through Plaintiff's efforts? If so, what effect does that have on Plaintiff's claims?

n. Why were critical elements of the relationship between the Baileys, Plaintiff, Friedman, Gussman, and/or the Friedman Group ever reduced to writing?[32]

o. Does Friedman owe $45,000-$50,000 to Plaintiff in connection with the 1998 Contract?[33]

p. Did Friedman's relationship with Plaintiff and/or the Baileys, whatever it was, give rise to Friedman's fiduciary duties to any of them?

q. Did Friedman take any actions or make any statements that would support Plaintiff's equitable tolling argument?[34]

(together, the "Disputed Facts").

---

[32] It appears Friedman was reluctant to memorialize the agreement relating to the post-1999 relationship in writing, although Doug Bailey asked him several times to do so. *See* doc. 88-7, p. 14, doc. 108, p. 4; doc. 119, p. 35; doc. 122-1, p. 5; doc. 123, p. 7. The closest Friedman came was to prepare an unsigned letter dated June 30, 2005, attempting to set out the 1999 oral agreement. Doc. 119, p. 45. Friedman never signed the letter, although Doug Bailey signed "in general agreement." Friedman testified that the unsigned letter was "notes in the meeting." Doc. 116, p. 18.

[33] Doc. 109, p. 7.

[34] Response, pp. 22-23, and the record cited therein.

-9-

2. <u>Breach of Contract</u>. This claim is an alternative to the specific performance claim. Because of the Disputed Facts, the Motion is denied with respect to this claim.

3. <u>Declaratory Judgment</u>. In this claim Friedman seeks a declaratory judgment that he owns the Real Estate. The Motion is denied with respect to this claim, in light of the Disputed Facts.

4. <u>Unjust Enrichment</u>. Friedman styled this claim unjust enrichment, but asks the Court to impose a constructive trust on the Real Property. For the reasons set forth above, the Court denies the Motion with respect to this claim.

5. <u>Suit on Debt and Account Stated</u>. The Friedman Group asks for a money judgment against Plaintiff for more than $1,250,000, based on an alleged open account, account stated, and/or advances made to Plaintiff. The Court finds that there are fact issues preventing entry of summary judgment, namely (i) whether the amount claimed due for the "Original Investment Loan" is really due;[35] and (ii) the extent to which Plaintiff can offset the amount due with claims of its own. With respect to the statute of limitations issue, the Court agrees with Plaintiff that a party may assert, at a minimum, equitable recoupment with respect to claims barred by the statute of limitations. *See, e.g., City of Carlsbad v. Grace,* 126 N.M. 95, 966 P.2d 1178 (Ct. App. 1998). Furthermore, there are genuine fact issues relating to Plaintiff's equitable tolling arguments. Response, p. 22. Finally, Mr. Friedman testified that he would pay amounts he owes Plaintiff, even if the claim is ten years old. Doc. 109, p. 7. This raises a fact issue about waiver of any statute of limitations defense.

---

[35] See footnote 13 and accompanying text.

Case 08-01031-t    Doc 135    Filed 11/09/12    Entered 11/09/12 13:27:58 Page 10 of 14

6. <u>Complaint on Promissory Notes</u>. In this claim Friedman asks for a money judgment on four promissory notes in the amount of $650,000 plus 10% interest. For the reasons set forth above, the Motion is denied with respect to this claim.

C. <u>Lapeer's Claim</u>. Lapeer claims that Plaintiff owes $101,400 for goods sold. Motion, p. 8. The Court finds that there are fact issues preventing entry of summary judgment on this claim, namely the extent to which Plaintiff can offset or recoup the amount due with claims of its own, and whether Plaintiff owes the money, given Plaintiff's allegations about sending the International Truck contract work to Marvin Engineering. Response, p. 13; doc. 119, p. 33-35; doc. 88-1, p. 9, ¶45. Since Lapeer is an indirect affiliate of Friedman, Plaintiff's argument that the $101,400 should be paid by Marvin Engineering, the entity that allegedly made all of the profit on the International Truck contracts, needs to be tried.

D. <u>Plaintiff's Count I (Turnover)</u>. Plaintiff's turnover count is really a claim for damages, or for an accounting, or for breach of contract. Such actions typically are not "turnover" actions under 11 U.S.C. §542(b), which generally are limited to accounts receivable collections. *See e.g. In re Pixius Communications, LLC*, 2005 WL 2850297, *2 (Bankr. D. Kan. 2005), citing *United Methodist Youthville, Inc. v. Lutheran Social Services (In re United Methodist Youthville, Inc.)*, 289 B.R. 754 (Bankr. D. Kan. 2003), and Lawrence P. King, 1 COLLIER ON BANKRUPTCY, ¶3.02[3][c], p. 3-43 (15th rev. ed. 2005). Treating Count I as a claim for money due, the Court finds that the Disputed Facts prevent summary judgment in Movants' favor.

E. <u>Plaintiff's Count II (Declaratory Judgment and Recovery of Preferential Transfers)</u>.

-11-

1. <u>Declaratory Judgment</u>. The Court finds that the Disputed Facts prevent entry of summary judgment in Movant's favor on this claim.

2. <u>Recovery of Preferential Transfers</u>. Plaintiff has asserted a preferential transfer claim against Friedman, alleging that Friedman was an insider. The claim is for all transfers made within one year of the petition date. The amount sought is not specified. Friedman asks for summary judgment on the preference claim, arguing that there is no evidence Friedman was an insider of the Plaintiff. Motion, p. 32-33. In the Response, Plaintiff argues that the evidence raises a fact issue about Friedman's insider status. The definition of "insider" uses the term "includes," so the Court may weigh all the facts presented at trial and determine whether Friedman should be considered an insider of the Plaintiff. *See, e.g., In re U.S. Medical, Inc.*, 531 F.3d 1272, 1276 (10th Cir. 2008) (the word "includes" is not limiting); *In re South Beach Securities, Inc.*, 606 F.3d 366, 377 (7th Cir. 2010); *In re Winstar Communications, Inc.*, 554 F.3d 382, 395 (3d Cir. 2009) (recognizing "non-statutory insiders," who fall within the definition but outside of any of the enumerated categories). The record raises a material fact issue about whether Friedman was an insider of the Plaintiff, so the Motion must be denied for this claim.

F. <u>Plaintiff's Count III (Ten Claims)</u>.

1. <u>Tortious Interference</u>. Plaintiff's Count III is a laundry list of ten claims, including tortious interference. None is separately plead. The Court finds that the Disputed Facts raise fact issues about the tortious interference claim.[36]

---

[36] The Court is concerned that some of Plaintiff's claims, including tortious interference, are not well plead. The Court has the right to dismiss claims *sua sponte* if they are obviously deficient on their face. *See Raiser v. Kono*, 245 Fed. Appx. 732, 735 (10th Cir. 2007), citing *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991).

-12-

2. <u>Economic Duress</u>. Plaintiff's Count III includes a claim for economic duress. The Court finds that the Disputed Facts prevent summary judgment on this claim.

3. <u>Other Count III Claims</u>. Movants did not specifically address the other eight claims in Count III. Rather, Movants argue that all of the components of Plaintiff's damages calculation are undisputedly meritless, therefore entitling Movants to summary judgment on the underlying claims. Plaintiff has conceded that two items of alleged damages are without merit—net operating loss carryforwards and the Baileys' loans to Plaintiff. Response, pp. 13-14.[37] With respect to the other damages components Plaintiff asserts, the Court finds that there are fact issues, although the Court agrees with Movants that some of the alleged elements appear weak on the current record.

IV. CONCLUSION

This adversary proceeding has complicated facts, and is further complicated by the parties' failure to document the essential terms of their post-1999 relationship. The Court has no idea how the case will turn out after a trial on the merits, but concludes that summary judgment is not appropriate. The Motion therefore will be denied. By so ruling the Court is not determining the merits of any claim or defense.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate order will be entered.

---

Rather than dismiss the claims now, without prejudice, the Court will address its concerns at a status conference, to be held as soon as the parties can be available.



---
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: November 9, 2012

Copies to:

Trey Arvizu
P.O. Box 1479
Las Cruces, NM 88004-1479

Chris Pierce
2632 Mesilla St., NE
Albuquerque, NM 87110

Linda Bloom
P.O. Box 218
Albuquerque, NM 87103

---

[37] In the Response, the Plaintiff asserts that Doug Bailey may have claims against one or more of the Friedman Group based on these alleged elements of Plaintiff's damages claim. Currently, Mr. Bailey is not a plaintiff in this matter and has not asserted any claim against any party.

-14-